## The Merchants' Insurance Company *v.* Algeo & Co.

A policy of insurance was effected on an ice-boat, from Freeport to Nashville, " to be brought down to Pittsburgh by sweeps, and to be towed thence by steamboat;" the pilot, instead of stopping at Pittsburgh, proceeded on by sweeps to a landing about three miles below, in pursuance of a previous determination, and not to escape any danger insured against; before arriving at which, the boat was lost by perils of the river: *Held*, that this was a change of the voyage insured, and discharged the underwriters.

ERROR to the District Court of *Allegheny county*.

This was an action of covenant by John Algeo & Co. against the Merchants' Insurance Company of Philadelphia, on a policy of insurance on four ice-boats, from Freeport, Pennsylvania, to Nashville, Tennessee. Two other cases on the same policy are reported in 7 *Casey* 446.

On the 3d April 1856, the plaintiffs effected a policy of insurance with the defendants, in $6000, upon a cargo of ice, contained in four ice-boats, from Freeport, Pennsylvania, to Nashville, Tennessee; *to be brought down to Pittsburgh by sweeps, and to be towed thence by steamboat* General Larimer to Nashville—being to amount of $1500 on each boat, separate insurance.

On the 8th April 1856, the boats started from Freeport, and instead of being taken in tow by the steamer at Pittsburgh, the pilot, in pursuance of a previous determination, steered the boats past the city, and entering the Ohio river, continued his course past the city of Allegheny and the borough of Manchester, until he had reached a point about three miles below Pittsburgh; where, in attempting to land on the northern shore of the Ohio, one of them struck a root and became a total loss.

On the trial, the defendants' counsel presented certain points in writing, upon which they requested the court to charge the jury, the 7th of which was as follows :—

If the jury believe that the plaintiffs or their agents had determined to land at the place they did land, before the commencement of the voyage, the risk never attached, and the plaintiffs are not entitled to recover, notwithstanding the matter of excuse set up on the trial.

The court below declined so to charge, and instructed the jury as follows :—

" By the terms of the policy, the plaintiffs were bound to bring down their ice-boats from Freeport to Pittsburgh by sweeps, and to tow them from Pittsburgh to Nashville, the place of destination, by the steamboat General Larimer. The plaintiffs were not absolutely bound to land their ice-boats at or within the limits of Pittsburgh, if they could be taken in tow without landing. But

[The Merchants' Insurance Company *v.* Algeo & Co.]

if it was necessary to land, in order that their boats should be taken in tow by the General Larimer, then it was the plaintiffs' duty to land their boats at Pittsburgh, and within the limits of the city. And if the plaintiffs could have landed them in safety, or taken them in tow without landing at Pittsburgh, not having complied with the terms of the policy in this respect, they are not entitled to recover in this action. But if the deviation arose from causes over which they had no control—if owing to the state of the river, the height of the water, the force of the current, and the condition of the shore, it was not possible or practicable for the plaintiffs to land their boats in safety at Pittsburgh, or to have them taken in tow without being first landed, then this action may be maintained, although the terms of the policy in this respect have not been complied with. The fact that it may have been difficult and inconvenient to land, if it was safe or at all practicable, would not be sufficient to excuse the deviation. But if the boats could not have been landed at the stage in which the river then was, or without great hazard to their safety; if in the judgment of competent, skilful, and experienced pilots, acquainted with the navigation of the Allegheny, and the difficulty and danger of attempting to land at that stage of the water, it would not have been considered safe or prudent to have made the attempt, but on the contrary, extremely hazardous, and, in all probability, perilous to the safety of the boats and their cargo; then the plaintiffs were justified in not attempting to land their boats within the limits of Pittsburgh. If the attempt to land would in all probability have endangered the safety of the boats and their cargo, the plaintiffs were not bound to make the attempt. But if the boats could have been taken in tow at Pittsburgh without being landed, the deviation was unnecessary, and this action cannot be maintained.

"The fact that the pilot had made up his mind before leaving Freeport, not to land at Pittsburgh, but to land at the Pork-House, two or three miles below, will not affect the defendant's liability, or prevent the plaintiffs from recovering in this action, if the boats could not have been safely landed at Pittsburgh. It would seem that the pilot came to this determination from the observation and survey which he made of the river, the previous evening, as he went up from Pittsburgh to bring down the plaintiffs' boats. It is no objection to the soundness of his opinion, that it was based on the observations which he made the preceding evening, instead of being formed from such observations as he would be able to make while approaching the city with the boats, as there is no evidence that the river had in the meantime fallen.

"The jury will determine from all the evidence, whether the plaintiffs' boats might have been safely landed at Pittsburgh, or whether they might have been taken in tow without being landed. If the jury find that the boats could have been safely landed at

[The Merchants' Insurance Company *v.* Algeo & Co.]

Pittsburgh, or taken in tow without being landed, the plaintiffs cannot recover.   But if the jury find that owing to the dangers of the navigation, it was impossible or impracticable to land, and that the boats could not have been taken in tow without being first landed, the jury will then determine whether the plaintiffs landed at the nearest safe landing below Pittsburgh.   The plaintiffs, if they could not land at Pittsburgh, were bound to land at the nearest safe harbour within their reach.   They would not be justified in passing a safe, practicable harbour, for the purpose of landing at another at a greater distance below the city.   If they could pass one landing they might pass others, and thus deviate wholly from the terms of the policy, without any necessity being shown to excuse or justify it.   The defendants insist that the landing at Saw-Mill Run, on the south side of the Ohio, was at that time a safe, commodious, and practicable landing; and being nearer to the city, the plaintiffs ought to have landed there.   The plaintiffs, on the contrary, allege that owing to the stage of the water, as the river then was, and the manner in which the current sets in against the shore when the Allegheny is high, and the master stream as it then was, and the way in which the landing was then occupied with coal-boats and other craft, it was not practicable to land there; that it would have endangered the safety of their own boats and cargo, as well as the other craft moored there, and that the nearest safe landing was at the Pork-House. The jury will determine from the evidence whether the plaintiffs could have landed their boats at Saw-Mill Run, or whether it would have been prudent, under the circumstances, to have attempted to land them there.   If that was a safe, practicable landing, the plaintiffs were not justified in passing it, and cannot, therefore, recover in this action.   But if it was impossible to land there, or if it would have been imprudent and unsafe to have attempted to land there, then the plaintiffs were justified in going to the Pork-House.   The plaintiffs were bound to exercise good faith, and a sound and reasonable discretion in the selection of a landing, and to have a competent and skilful crew to navigate their boats; and in order to maintain this action, the plaintiffs were bound to furnish the defendants with proof of the loss, and of their interest in the cargo of ice, and the amount of their claim, sixty days prior to the institution of this suit, as required by the terms of the policy.   But if notice was given of the loss of the boat and its cargo, and the amount and value thereof, and the company were required to pay the same, and made no objection to the proof furnished, they may fairly be presumed to have waived any objections to the sufficiency of the proof.   The jury will determine whether the necessary proof of loss, and of plaintiffs' interest, and the amount of their claim therefor, was or was not furnished to the company, and whether any objections were made as to its

sufficiency in any particular. If proof was furnished and no objections made, the plaintiffs may maintain this action for the loss of the cargo of ice contained in the lost boat. If the jury find that the plaintiffs furnished the requisite proof of loss, &c., or made no objection as to the sufficiency thereof, they will then determine—

"1st. Whether the plaintiffs could have landed their boats at Pittsburgh, or might have had them taken in tow without being landed? If they could have done either, they are not entitled to maintain this action.

"2d. But if they could not have landed their boats in safety at Pittsburgh, or could not have taken them in tow without their being landed, the jury will then determine whether they landed them at the nearest safe and practicable landing; and if the jury so find, then the plaintiffs are entitled to recover the value of the cargo of ice lost by the sinking of the boat, in attempting thus to land, provided it does not exceed the sum insured."

To this charge the defendants excepted; and a verdict and judgment having been rendered for the plaintiffs for $1688, the defendants removed the cause to this court, and here assigned the same, *inter alia*, for error.

*Knox & Hamilton*, for the plaintiffs in error.—The undertaking that the boats should be towed from Pittsburgh to Nashville, constituted a warranty; and not having been complied with, the underwriters were discharged.: *Phillips on Insurance*, § 760; De Hahn v. Hartley, 1 *T. R.* 243; Blackhurst v. Cockell, 3 *Id.* 360; Newcastle Fire Insurance Co. v. Macmorran, 3 *Dow* 255.

*Marshall & Brown*, for the defendants in error, cited *Phillips on Insurance*, § 770-3; *Id.* § 782; *Id.* §§ 119, 133; De Hahn v. Hartley, 1 *T. R.* 243; Cruickshanks v. Janson, 2 *Taunt.* 301; Cochran v. Fisher, 1 *C., M. & R.* 809; Eyre v. Insurance Co., 5 *W. & S.* 116, 123.

The opinion of the court was delivered by

LOWRIE, C. J.—A voyage that is insured must be so conducted as not to change the risk insured against. If the usual mode, or the agreed mode of conducting it, be changed without a necessity arising from a danger insured against, the risk is changed.

The agreed mode of conducting this voyage was changed by running the boats with sweeps to the lower end of Manchester, instead of to Pittsburgh. Did it appear that this change was necessary in order to escape a danger insured against? We think not.

[The Merchants' Insurance Company *v.* Algeo & Co.]

When the plaintiffs below got insurance on a voyage, to be conducted in a prescribed mode, we must understand them as stipulating that that mode was practicable, and should be followed. If, therefore, the voyage in that mode was not practicable with a twelve foot stage of water, they had no insurance when attempting it at that stage; and they passed Pittsburgh, not to escape a danger insured against, but because they started at a time, when performance of the agreed conditions of the voyage was impracticable.

If the voyage in the agreed mode was, as we must presume, practicable with any other stage of water, they were bound to start with such a stage, or give up their insurance by changing the risk agreed upon. Stopping at Pittsburgh, and going in tow from that place, were essential parts of the voyage as agreed to be conducted, and this was prevented by intentionally starting with a stage of water that rendered it impracticable. The plaintiffs had no right to change the terms of the policy, by choosing to start at a time that made the change necessary. A change from necessity is one arising from a cause discovered after the commencement of the voyage.

In a short voyage like this (about four hours) the plaintiffs are charged with knowledge of the difficulties of the navigation; and their own proof shows that they did know them, and that, on account of them, they did not intend to stop at Pittsburgh. They started under a risk not insured against, and for this they changed the form of the voyage; and it follows, that the insurance never attached to this boat, and the plaintiffs might have been nonsuited on their own evidence. Under the circumstances of the case, the court ought to have affirmed the defendants' seventh proposition.

Judgment reversed, and a new trial awarded.